UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LASHAILA GATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-23-663-G |
| | ) |
| OKLAHOMA HEALTH AND, | ) |
| WELLNESS CENTER, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Lashaila Gates has brought this lawsuit against Defendant Oklahoma Health and Wellness Center, alleging the violation of Plaintiff's federal and state statutory rights in connection with her employment with Defendant. *See* Compl. (Doc. No. 1). Now before the Court is Defendant's Motion to Dismiss (Doc. No. 8). Plaintiff has responded (Doc. No. 15), and Defendant has replied (Doc. No. 17).

   I.   *Summary of the Pleadings*

In the Complaint, Plaintiff alleges that beginning on or about April 15, 2019, she was employed by Defendant, a facility in Custer County, Oklahoma, as a chiropractic assistant. *See* Compl. at 1-2, 3. Upon beginning her employment, Plaintiff was subjected to discriminatory treatment from Dr. Douglas Cook, the owner of the facility. *Id.* at 3. Plaintiff is an African-American female, and Dr. Cook is a white male. *Id.* at 1, 4.

Plaintiff alleges that she was sexually harassed and groped by a facility client who was a friend of Dr. Cook. *See id.* ¶ 3. When Plaintiff reported the incident to Dr. Cook, Dr. Cook "laughed it off and informed Plaintiff 'oh that is just Warren.'" *Id.* ¶ 4. Dr.

Cook forced Plaintiff to continue to work with that client despite Plaintiff's "refusal," and no investigation of the sexual harassment allegations was ever conducted. *Id.* ¶ 5.

In the summer of 2020, Dr. Cook "claimed to have taken an ancestry DNA test" "revealing that he possessed 3% African heritage." *Id.* ¶ 6. Dr. Cook also stated that Plaintiff and he were "cousins" and that he liked "fried chicken and watermelon." *Id.* Plaintiff experienced significant discomfort with these remarks and found them to be highly inappropriate. *Id.*

During the same time period, Dr. Cook made numerous comments to Plaintiff regarding the Black Lives Matter movement. *Id.* ¶ 7. These comments included "accusations that members of the movement were criminals" and assertions that George Floyd and Breonna Taylor "were not heroes and deserved the tragic circumstances they encountered." *Id.*

Plaintiff, one of only a few African-American employees, was initially paid $9.00/hour and received a raise after one year to $10.00/hour. *Id.* ¶¶ 8-9. After being employed almost two years, she received a second raise to $11.00/hour. *Id.* ¶ 9. During Plaintiff's employment, a white individual was employed with no prior experience; after a few months, that individual received a raise to $11.00/hour. *Id.*

Plaintiff alleges that Dr. Cook intentionally stopped scheduling an African-American employee for work, ultimately leading to the employee's termination. *See id.* ¶ 12. This employee was receiving minimum wage; the white employee who replaced that individual was compensated at "twice" that rate. *Id.*

In January of 2021, Dr. Cook expressed his disapproval of his daughter dating

individuals of African-American descent.  *Id.* ¶ 13.  "Dr. Cook further propagated the notion that people should exclusively pursue romantic relationship within their own racial group."  *Id.*  These comments caused Plaintiff extreme discomfort and distress.  *Id.*

In late January of 2021, Dr. Cook insinuated that he "comprehended the origins of Ebonics, yet failed to understand why African Americans cannot speak in a manner that he deemed 'regular.'"  *Id.* ¶ 14.  "[I]n the presence of Plaintiff's husband, Dr. Cook . . . request[ed] that Plaintiff and her husband engage in communication that he deemed was 'regular.'"  *Id.*

Near the end of Plaintiff's employment, Plaintiff's work hours were significantly reduced, "and despite her presence during scheduled shifts, Dr. Cook would falsely claim that she was not scheduled, even though other staff members confirmed her presence on the schedule."  *Id.* ¶ 15.  Dr. Cook also attempted to send Plaintiff home on several occasions.  *Id.*

Plaintiff claims that she was "constructively terminated" on or about February 8, 2021, due to seeing that Dr. Cook had "liked" a Facebook comment in which the commenter had stated, "Fuck that n-----."  *Id.* ¶ 16.

II.     Relevant Standards

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff."  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as

true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id.* at 1192.

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

III. Discussion

Despite purporting to seek dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant's Motion rests almost entirely upon a freewheeling discussion of the alleged falsity or inaccuracy of Plaintiff's factual allegations regarding her employment. *See* Def.'s Mot. at 5-7, 10-15, 16-17, 18, 20, 23, 24-26. Such briefing fails to recognize that the Court must accept Plaintiff's well-pleaded allegations as true and view them in Plaintiff's favor. *See Burnett*, 706 F.3d at 1235. Defendant additionally relies upon summary-judgment standards and other authorities inapplicable to the Court's examination of either Title VII or OADA claims at the pleading stage. *See, e.g.*, Def.'s Mot. at 8 (reciting the elements of a 42 U.S.C. § 1983 claim for violation of the Equal

Protection Clause).[1]

The Court nonetheless has extracted Defendant's pertinent arguments for dismissal and will consider them using the governing standards outlined above.

### A. *Plaintiff's Title VII Claims*

The allegations of the Complaint most reasonably reflect that Plaintiff is seeking relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), under theories of race-based disparate treatment and hostile work environment, and for race discrimination in violation of the Oklahoma Anti-Discrimination Act ("OADA"), Okla. Stat. tit. 25, §§ 1101 et seq. *See* Compl. at 3, 6-9.[2]

#### 1. *Race Discrimination: Disparate Treatment*

Under Title VII, it is unlawful for an employer to discharge an individual or otherwise discriminate against that individual "because of such's individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff proves a violation of Title VII

> either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973). Under *McDonnell Douglas*, a three-step analysis requires the plaintiff first prove a prima facie case of discrimination. To set forth a prima facie case of discrimination, a plaintiff must establish that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she

---

[1] Defendant further presents an affidavit and other evidence along with its Motion. These items are not properly before the Court on a Rule 12(b)(6) motion, and the Court has excluded them from its consideration. *See* Fed. R. Civ. P. 12(b)(6), (d).

[2] To the extent the parties' briefing suggests that Plaintiff is attempting to bring additional federal or state-law claims premised upon other theories of liability—e.g., a retaliation claim or a sex-discrimination claim—no such claims are plausibly implicated by the allegations of the Complaint.

qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class. The burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. If the defendant does so, the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext.

*Khalik*, 671 F.3d at 1192 (citations omitted).[3]

Defendant challenges Plaintiff's pleading of an adverse employment action, first arguing that the termination of Plaintiff's employment cannot be such an action because Plaintiff "was not fired by Defendant" and cannot show she was constructively discharged, as alleged in the Complaint. Def.'s Mot. at 18.

> The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign. When the employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge.
>
> A claim of constructive discharge therefore has two basic elements. A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign. But he must also show that he actually resigned.

*Green v. Brennan*, 578 U.S. 547, 555 (2016) (citations and internal quotation marks

---

[3] The requirement that a plaintiff establish a prima facie case is an evidentiary burden rather than a pleading requirement. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). In clarifying the role of the *McDonnell Douglas* framework on a motion to dismiss, the Tenth Circuit has explained that "[w]hile the 12(b)(6) standard does not require that [the plaintiff] establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether [the plaintiff] has set forth a plausible claim." *Khalik*, 671 F.3d at 1192; *see Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015). Further, the articulation of the prima facie case under the *McDonnell Douglas* framework "may well vary," however, "depending on the context of the claim and the nature of the adverse employment action alleged." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).

omitted).

Having considered Plaintiff's allegations as to the circumstances of her employment, the Court concludes that Plaintiff has stated a claim for constructive discharge upon which relief can be granted. Plaintiff cites multiple instances of highly offensive discriminatory conduct, culminating in the Facebook incident, and it is undisputed that Plaintiff "actually resigned" her position. *Id.*; *see* Compl. ¶¶ 4-7, 9-10, 12-16. Accordingly, Plaintiff has adequately alleged that her "conditions of employment [were] objectively intolerable," such that "she had no other choice but to quit." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir. 2004) (emphasis and internal quotation marks omitted).

Defendant additionally asserts Plaintiff's cited delays in receiving raises and reductions in work hours are "mere alterations to job responsibilities" that do not rise to the level of an adverse employment action. Def.'s Mot. at 18. Again, the Court disagrees. Under Title VII, "[a]n adverse employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) (internal quotation marks omitted). The allegations of the Complaint plausibly show that Plaintiff suffered more than "a mere inconvenience or an alteration of job responsibilities" when she was denied raises and subjected to a reduction in work hours. *Id.* at 1239 (internal quotation marks omitted) (noting that the Tenth Circuit "liberally define[s] the phrase adverse employment action" (internal quotation marks omitted)).

7

### 2. Race Discrimination: Hostile Work Environment

Considering Plaintiff's hostile work environment claim under Title VII, the applicable elements are: "(1) the plaintiff is a member of a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on [race, color, religion, sex, national origin, age, or disability]; and (4) the harassment was sufficiently severe or pervasive that it 'altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.'" *Smith v. McDonough*, No. CIV-21-737-F, 2021 WL 5999601, at *1 (W.D. Okla. Dec. 20, 2021) (quoting *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015)). Hostile work environment claims are based upon "the cumulative effect of individual acts"; they involve "repeated conduct" that "occurs over a series of days or perhaps years." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

Defendant objects that Plaintiff fails to adequately plead the fourth element—i.e., that Plaintiff fails to establish that the alleged discriminatory conduct, viewed "from the perspective of a reasonable person in the plaintiff's position," was "so severe or pervasive as to alter the terms or conditions of employment." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (internal quotation marks omitted); *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021); *see* Def.'s Mot. at 18-19.

The applicable test for a hostile work environment has both an objective and a subjective component. *See Fox v. Pittsburg State Univ.*, 257 F. Supp. 3d 1112, 1123, 1130 (D. Kan. 2017). "In determining whether an objectively 'severe or pervasive' hostile environment exists," "it is necessary to look at all the circumstances involved, including

the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 1130 (internal quotation marks omitted). While the offending conduct is not required to have "seriously affected the plaintiff's psychological well-being," the "conduct must be extreme"; "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.*; *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted).

Taking Plaintiff's allegations as true, Plaintiff has adequately pled that Defendant's conduct, "considering all the circumstances," was objectively severe and pervasive. *Morris*, 666 F.3d at 664 (emphasis and internal quotation marks omitted). As noted, Plaintiff alleges that numerous discriminatory incidents occurred within a period of less than two years, including the making of comments by the facility owner to Plaintiff and her husband, which plausibly supports a finding "that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult." *Throupe*, 988 F.3d at 1252 (internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). In addition, "[t]he severity and pervasiveness evaluation . . . is quintessentially a question of fact" and "typically a question for the jury." *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1174 (10th Cir. 2020) (internal quotation marks omitted); *Throupe*, 988 F.3d at 1252. Defendant is not entitled to dismissal of this claim under Rule 12(b)(6).

### B. *Plaintiff's OADA Claim*

The OADA "provides for exclusive remedies within the state of the policies for individuals alleging discrimination in employment on the basis of . . . race" or "color." Okla. Stat. tit. 25, § 1101(A). Like Title VII, the OADA prohibits employer discrimination based on race. *See id.* § 1302. Relying on the same propositions as set forth to challenge the federal claims, Defendant asserts that "Plaintiff has not met her burden of proof" as to her claim for relief under the OADA. Def.'s Mot. at 15-17.

Because "[t]he OADA is analyzed similarly to the Title VII claims," *Jones v. Needham*, 856 F.3d 1284, 1292 (10th Cir. 2017), the Court's disposition of the Title VII claims applies equally to Plaintiff's corresponding OADA claims. *See Tilghman v. Kirby*, 662 F. App'x 598, 601 (10th Cir. 2016); *Thomas v. Wal-Mart Assocs., Inc.*, No. CIV-21-94-G, 2023 WL 6380002, at *3 n.3 (W.D. Okla. Sept. 29, 2023). It follows that Defendant has not shown that Plaintiff's OADA claim is subject to dismissal pursuant to Rule 12(b)(6).

### CONCLUSION

For the foregoing reasons, Defendant Oklahoma Health and Wellness Center's Motion to Dismiss (Doc. No. 8) is DENIED.

IT IS SO ORDERED this 5th day of August, 2024.

*[Signature: Charles B. Goodwin]*
CHARLES B. GOODWIN
United States District Judge